Eastern District of Kentucky

F I L E D

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LONDON

NOV 2 7 2006

AT LONDON
LESLIE G. WHITMER
CLERK U.S. DISTRICT COURT

CIVIL ACTION NO. 06-72-GWU

DIANIA BISHOP,                                                                      PLAINTIFF,

VS.                             **MEMORANDUM OPINION**

JO ANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY,                        DEFENDANT.

## INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative

denial of her applications for Disability Insurance Benefits (DIB) and Supplemental

Security Income (SSI). The appeal is currently before the Court on cross-motions

for summary judgment.

## APPLICABLE LAW

The Sixth Circuit Court of Appeals has set out the steps applicable to judicial

review of Social Security disability benefit cases:

1.     Is the claimant currently engaged in substantial gainful activity?
       If yes, the claimant is not disabled. If no, proceed to Step 2.
       See 20 C.F.R. 404.1520(b), 416.920(b).

2.     Does the claimant have any medically determinable physical
       or mental impairment(s)? If yes, proceed to Step 3. If no, the
       claimant is not disabled. See 20 C.F.R. 404.1508, 416.908.

3.     Does the claimant have any severe impairment(s)--i.e., any
       impairment(s) significantly limiting the claimant's physical or
       mental ability to do basic work activities? If yes, proceed to

1

Bishop

Step 4.  If no, the claimant is not disabled.  See 20 C.F.R. 404.1520(c), 404.1521, 416.920(c), 461.921.

4.  Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months? If yes, proceed to Step 5.  If no, the claimant is not disabled. See 20 C.F.R. 404.920(d), 416.920(d).

5.  Does the claimant have any impairment or combination of impairments meeting or equaling in severity an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing of Impairments)? If yes, the claimant is disabled.  If no, proceed to Step 6.  See 20 C.F.R. 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).

6.  Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform this kind of past relevant work?  If yes, the claimant was not disabled.  If no, proceed to Step 7.  See 20 C.F.R. 404.1520(e), 416.920(e).

7.  Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education, and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy?  If yes, the claimant is not disabled.  See 20 C.F.R. 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(1).

Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984).

Applying this analysis, it must be remembered that the principles pertinent to the judicial review of administrative agency action apply.  Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence.  Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991).  This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to

2

Bishop

support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

One of the detracting factors in the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim. Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982). This presumes, of course, that the treating physician's opinion is based on objective medical findings. Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984). Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary. Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987). These have long been well-settled principles within the Circuit. Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain. Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms. 20 C.F.R. Section 404.1529 (1991). However, in evaluating a claimant's allegations of disabling pain:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively

3

Bishop

established medical condition is of such a severity that it can
reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir.
1986).

Another issue concerns the effect of proof that an impairment may be
remedied by treatment. The Sixth Circuit has held that such an impairment will not
serve as a basis for the ultimate finding of disability. Harris v. Secretary of Health
and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984). However, the same
result does not follow if the record is devoid of any evidence that the plaintiff would
have regained his residual capacity for work if he had followed his doctor's
instructions to do something or if the instructions were merely recommendations.
Id. Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106,
1113 (6th Cir. 1986).

In reviewing the record, the Court must work with the medical evidence before
it, despite the plaintiff's claims that he was unable to afford extensive medical work-
ups. Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir.
1987). Further, a failure to seek treatment for a period of time may be a factor to be
considered against the plaintiff, Hale v. Secretary of Health and Human Services,
816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford
or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242
(6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

4

Bishop

In the Sixth Circuit, the Step Three severity regulation has been held to be a de minimus hurdle in the disability determination process. Murphy v. Secretary of Health and Human Services, 801 F.2d 182, 185 (6th Cir. 1986). An impairment can be considered not severe only if it is a "slight abnormality that minimally affects work ability regardless of age, education, and experience." Farris v. Secretary of Health and Human Services, 773 F.2d 85, 90 (6th Cir. 1985). Essentially, the severity requirements may be used to weed out claims that are "totally groundless." Id., n.1.

## DISCUSSION

The administrative law judge (ALJ) found that Bishop suffered from hypertension, gastroesophageal reflux disease, and a history of chest pain, fatigue and dizziness. (Tr. 21). Nonetheless, he believed that none of the conditions produced a "severe" impairment. (Id.).

In finding there was no "severe" impairment, the ALJ specifically rejected the opinion of "Treating Physician" Kim McIntosh as not being supported by objective data and being against the weight of other medical evidence (Tr. 20), something the plaintiff argues is reversible error.

Records from The Family Practice Clinic of Booneville (the Clinic), first, clearly indicate that McIntosh was a nurse practitioner and not a physician.[1] Thus, she was not an "acceptable medical source" as per 20 C.F.R. Section 404.1513, as to be

---

[1]Note the "N.P." initials on the Clinic stationery (e.g., Tr. 110) and her assessment form (Tr. 227).

5

entitled to binding weight. At most, McIntosh's statements are only those of another source, whose evidence "may" be used.

Second, while hypertension and chest pain were two of the diagnoses McIntosh listed on the assessment form (Tr. 223), the Clinic's progress notes for immediately before the onset date indicate that an EKG was "good," her heart sounds were normal, there was no peripheral edema and that the plaintiff felt much better (Tr. 113) and, for the next office visit in June, 2003, that the plaintiff was healing well from a recent catheterization by a Dr. Yalamanchi, who was going to continue to see her (Tr. 112). Later office notes mainly related to medication refills, with a December, 2003 note indicating that the plaintiff had no chest pain or shortness of breath. (Tr. 110). Apparently, according to the assessment form, the plaintiff was not seen again at the Clinic until almost eight months later. (Tr. 223). During that August visit, she was felt to have "controlled" hypertension and there were no noted abnormal cardiovascular or respiratory findings; a secondary diagnosis of thoracic spine pain was accompanied by no unusual musculoskeletal or neurological findings. (Tr. 236-237). In October, the plaintiff returned because she "needs papers filled out" and the nurse checked no particular complaints on the "Review of Systems" section of the progress note (Tr. 232); no abnormal findings were recorded in the respiratory, "eyes", cardiovascular or neurological sections of the form and the only findings related to lumbar tenderness (Tr. 233). Thus, the Clinic's own progress notes do not contain supportive data.

6

Bishop

Third, other information does not particularly support the use of any physical function restrictions. The staff at the Appalachian Heart Center indicated from May, 2003 to March, 2004 that the plaintiff's hypertension was controlled, her condition was stable and that she had normal coronary arteries as demonstrated by a catheterization; a last progress note indicated that she had no significant complaints and her chest pain was not of coronary artery etiology. (Tr. 116-118). She was treated for TB by medication by the Owsley County Health Department in 2002 and 2003, but was said to be asymptomatic (Tr. 127-134); she incidentally indicated to the staff in May, 2003 that her catheterization had revealed "everything okay" and that her doctor had told her she probably just had stomach problems (Tr. 127). Musculoskeletal findings were unremarkable in February and March, 2003 (Tr. 262-263). Finally, Manchester Memorial Hospital indicates that a stress test from 2005 showed no evidence of any induceable ischemia and a normal ejection fraction. (Tr. 282).

The plaintiff also argues that Ashwini Anand, another treating source, provided information not properly reviewed by the ALJ. Critically, Anand's information was before the alleged onset date. Four months prior to the alleged onset date, one of Dr. Anand's colleagues had seen the plaintiff for evaluation of neck and right arm pain and scheduled her for an echocardiogram and a Thallium stress test. (Tr. 242-243). A hospitalization for chest pain still several months before the alleged onset date, according to Attending Physician Steven Spady, revealed

7

Bishop

very mild cardiomegaly by chest x-ray, an EKG with some "questionable" anterior changes, and negative cardiac enzymes. (Tr. 297, 308). She was stable on discharge. (Tr. 297). Shortly after discharge, Anand, who had acted as a consultant during the hospitalization, conducted a perfusion study which was normal (Tr. 314). He also obtained an echocardiogram and found only mild tricuspid valve regurgitation and mild pulmonic valve insufficiency . (Tr. 296). Finally, even if Anand's information had been within the critical period and had not been superceded by more recent medical information, he still did not express an opinion about functional capacity as to assist the plaintiff.

For these reasons, and other reasons noted in the defendant's brief at pp. 13 and 14-15 regarding pain and any alleged mental impairment, the decision is affirmed.

This the __27__ day of November, 2006.

_____
G. WIX UNTHANK
SENIOR JUDGE